RECORD NO. 14-1494

In The

# United States Court of Appeals
### For The Fourth Circuit

## WENDELL GRIFFIN,

*Plaintiff – Appellant*,

**v.**

## BALTIMORE POLICE DEPARTMENT; JERRY LANDSMAN; DONALD KINCAID; EDWARD BROWN,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE

———————

## REPLY BRIEF OF APPELLANT

———————

Charles N. Curlett, Jr.
Sarah F. Lacey
LEVIN & CURLETT LLC
201 North Charles Street, Suite 2000
Baltimore, Maryland 21201
(410) 685-4444

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____14-1494_____    Caption: _____Wendell Griffin v. Baltimore Police Department_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____Wendell David Griffin_____
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____01/20/2015_____

Counsel for: _____Wendell David Griffin_____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____01/20/2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____01/20/15_____
        (signature)                                                              (date)

- 2 -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION.................................................................... 1

ARGUMENT.......................................................................... 3

I.   The district court's order of dismissal should be reversed and Mr.
     Griffin's suit should be allowed to proceed because no procedural
     hurdles remain to bar his suit................................................ 3

     A.   Because this case fits within the Wilson exception for § 1983
          claims by former prisoners, it is not barred by *Heck*................. 3

     B.   Mr. Griffin achieved a favorable termination of his life sentence
          through post-conviction proceedings sufficient to overcome
          *Heck*................................................................. 9

     C.   Appellees' arguments as to collateral estoppel lack
          merit.................................................................. 10

II.  The Detectives are not entitled to qualified immunity because the
     constitutional right at issue was clearly established in 1981-82 and
     their violation of that right is the cause of Mr. Griffin's
     injury................................................................... 12

     A.   Appellees fail to overcome the unbroken line of precedent from
          *Barbee*, traced in *Owens*, that shows the duty of police to
          disclose material exculpatory evidence to the prosecution was
          clearly established in 1981-82........................................ 12

     B.   Mr. Griffin's decision to consent to a modification of his life
          sentence to time served is not the supervening legal or
          proximate cause of his wrongful imprisonment.......................... 16

     C.   BPD may be held liable for the Detectives' conduct even if the
          Detectives ultimately succeed on their qualified immunity
          defense............................................................... 18

III.     Appellees concede that Mr. Griffin has stated a *Monell* claim against
         BPD…………………............................................................................... 20

CONCLUSION……………….................................................................................. 20

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
    510 U.S. 266 (1994) ...................................................................... 13

*Allen v. McCurry*,
    449 U.S. 90 (1980) ........................................................................ 10

*Anderson v. Atlanta*,
    778 F.2d 678 (11th Cir. 1985) ...................................................... 19

*Ashcroft v. al-Kidd*,
    131 S. Ct. 2074 (U.S. 2011) ......................................................... 12

*Barbee v. Warden, Md. Penitentiary*,
    331 F.2d 842 (4th Cir. 1964) ............................................. 13, 14, 15

*Barrett v. Orange Cnty. Human Rights Comm'n*,
    194 F.3d 341 (2d Cir. 1999) .......................................................... 19

*Bishop v. Cnty. of Macon*,
    484 F. App'x 753 (4th Cir. 2012) .................................................. 5

*Boone v. Paderick*,
    541 F.2d 447 (4th Cir. 1976) .................................................. 13, 14

*Brady v. Maryland*,
    373 U.S. 83 (1963) ................................................... 10, 12, 13, 19

*Burruss v. Bd. of Cnty. Comm'rs*,
    427 Md. 231, 46 A.3d 1182 (2012) ............................................. 11

*Campbell v. Beckley Police Dep't*,
    390 F. App'x 246 (4th Cir. 2010) .................................................. 4

*Curran v. Delaware*,
    259 F.2d 707 (3d Cir. 1958) .......................................................... 13

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ........................................................ 15

*Garcia v. Salt Lake Cnty.*,
768 F.2d 303 (10th Cir. 1985) ...................................................... 19

*Goodwin v. Metts*,
885 F.2d 157 (4th Cir. 1989) .................................................. 13, 14

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ..................................................................... 12

*Heck v. Humphrey*,
512 U.S. 477 (1994) ............................................................ *passim*

*Holmes v. State*,
401 Md. 429, 932 A.2d 698 (2007) ............................................... 8

*Jean v. Collins* ("*Jean I*"),
155 F.3d 701 (4th Cir. 1998), *cert. granted, judgment vacated*,
526 U.S. 1142 (1999) .................................................................... 14

*Jean v. Collins* ("*Jean II*"),
221 F.3d 656 (4th Cir. 2000) ........................................................ 15

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982) ..................................................................... 10

*Kyles v. Whitley*,
514 U.S. 419 (1995) ..................................................................... 19

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ........................................................ 16

*Lee v. Winston*,
717 F.2d 888 (4th Cir. 1983), *aff'd*, 470 U.S. 753 (1985)............... 10, 11, 20

*Limone v. United States*,
497 F. Supp. 2d 143 (D. Mass. 2007), *aff'd on other grounds*,
579 F.3d 79 (1st Cir. 2009) .......................................................... 18

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ................................................................................ 12

*Moguel v. State,*
    184 Md. App. 465, 966 A.2d 963 (Ct. Spec. App. 2009) .............................. 7

*Monell v. New York City Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) .......................................................................... 2, 19

*Olsen v. Correiro,*
    189 F.3d 52 (1st Cir. 1999) .............................................................. 17, 18

*Owens v. Baltimore City State's Attorneys Office,*
    767 F.3d 379 (2014) .................................................................... *passim*

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ................................................................................ 12

*Philips v. Pitt County Memorial Hosp.,*
    572 F.3d 176 (4th Cir. 2009) .................................................................... 6

*Reichle v. Howards,*
    132 S. Ct. 2088 (U.S. 2012) .................................................................... 12

*Robinson v. State,*
    354 Md. 287, 730 A.2d 181 (1999) .......................................................... 15

*Saucier v. Katz,*
    533 U.S. 194 (2001) ................................................................................ 12

*Skok v. State,*
    361 Md. 52, 760 A.2d 647 (2000) .............................................................. 8

*Spencer v. Kemna,*
    523 U.S. 1 (1998) .......................................................................... 2, 4, 16

*State v. Giles,*
    239 Md. 458, 212 A.2d 101 (1965), *rev'd on other grounds,*
    386 U.S. 66 (1967) ................................................................................ 15

*Thomas v. Cook County Sheriff's Dep't,*
    604 F.3d 293 (7th Cir. 2010) ........................................................ 19

*United States v. Sutton,*
    542 F.2d 1239 (4th Cir. 1976) .................................................... 13, 14

*Williams v. State,*
    364 Md. 160, 771 A.2d 1082 (2001) ............................................ 15

*Wilson v. Garcia,*
    471 U.S. 261 (1985) ...................................................................... 4

*Wilson v. Johnson,*
    535 F.3d 262 (4th Cir. 2008) ............................................... *passim*

*Youngblood v. West Virginia,*
    547 U.S. 867 (2006) .................................................................... 19

## Statutes

28 U.S.C. § 1738 .......................................................................... 10
42 U.S.C. § 1983 .................................................................. *passim*
Md. Code Ann., Crim. Proc. § 10-105 .......................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................ 9

## Other Authorities

Md. Parole Comm'n, *Pardon Guidelines, available at*
    http://www.dpscs.state.md.us/publicservs/pdfs/pardon_guidelines.pdf
    (last accessed Jan. 20, 2015) ...................................................... 8

## INTRODUCTION

The unique facts and procedural posture of this 42 U.S.C. § 1983 case are compelling.  Wendell Griffin was wrongfully incarcerated by the State of Maryland for over thirty years while serving a life sentence for the April 1981 murder of James Wise and a related weapon charge.  Mr. Griffin has maintained his innocence of these charges, diligently seeking direct, post-conviction, and collateral relief in the state and federal courts during that period.  He was unsuccessful at every turn — until June 2010, when he won a *pro se* motion for post-conviction DNA testing.  That success led to the appointment of counsel for Mr. Griffin.  With leave of court, appointed counsel successfully obtained the Baltimore City Police Department ("BPD") records that, for the first time, revealed that the Appellees (the BPD and Detectives Jerry Landsman, Donald Kincaid, and Edward Brown) had egregiously violated Mr. Griffin's constitutional rights during his original trial.

On February 2, 2012, through appointed counsel, Mr. Griffin filed a second post-conviction motion seeking leave to reopen the original criminal proceeding on the basis of the newly discovered evidence that had been suppressed.  Four days later, he also filed a petition for a writ of actual innocence on the same grounds. Consideration of these filings at a hearing on May 23, 2012 convinced the Honorable Gail Rasin of the Circuit Court for Baltimore City that Mr. Griffin's

case warranted a new trial. But before that court ordered the new trial, the parties reached a consent agreement reducing Mr. Griffin's life sentence to time served and terminating the post-conviction proceedings. Mr. Griffin was immediately released, initially on a three-year term of probation. The court terminated Mr. Griffin's probation after only seven months. Mr. Griffin brought this suit the following year. The district court then granted Appellees' motion to dismiss based on the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994), without addressing four other grounds Appellees raised in support of their motion.

In their response brief, Appellees now rely on the *Heck* bar and two of their original arguments on the motion to dismiss.[1] First, they reassert that Mr. Griffin's § 1983 action is barred by the *Heck* favorable termination requirement without regard to this Circuit's adoption, in *Wilson v. Johnson*, 535 F.3d 262 (4th Cir. 2008), of the limited exception for habeas ineligible former prisoners that five members of the Supreme Court found compelling in *Spencer v. Kemna*, 523 U.S. 1 (1998). In the alternative, even if *Heck* applies (which it should not), in the unique

---

[1] Notably, however, Appellees no longer contend that Mr. Griffin's action is barred by the statute of limitations or that Mr. Griffin failed to state a claim for municipal liability against BPD under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (2014).

circumstances of this case, Mr. Griffin achieved a favorable termination sufficient to lift the bar to suit.

Second, Appellees reassert that Mr. Griffin's claims should be barred by collateral estoppel. Because this argument relies on an incorrect application of Maryland law on issue preclusion, their position should be rejected.

Third, Appellees reassert that the Detectives are entitled to qualified immunity because the constitutional right that Mr. Griffin asserts was violated – the failure of the Detectives to disclose material exculpatory evidence to the prosecution – was not clearly established at the time of the events in this case, namely 1981-82. But this argument also relies on an incorrect and incomplete application of federal law and pertinent Maryland precedent and likewise should be rejected. For the reasons explained below and in Mr. Griffin's opening brief, the district court's order dismissing his case should be reversed.

## **ARGUMENT**

I. **The district court's order of dismissal should be reversed and Mr. Griffin's suit should be allowed to proceed because no procedural hurdles remain to bar his suit.**

A. **Because this case fits within the Wilson exception for § 1983 claims by former prisoners, it is not barred by *Heck*.**

As shown in Mr. Griffin's opening brief, this case falls squarely within the rule of *Wilson*. Appellees' arguments against *Wilson* are unavailing because Mr. Griffin never slept on his rights; instead, it was Appellees' conduct that prevented

3

Mr. Griffin from obtaining habeas relief and that now prevents him from seeking any other means of redress than a § 1983 action.

In *Wilson*, this Court concluded that "[i]f a prisoner could not, as a practical matter, seek habeas relief, and after release, was prevented from filing a § 1983 claim" because the prisoner was no longer in custody, "§ 1983's purpose of providing litigants with 'a uniquely federal remedy against incursions under the claimed authority of state law upon right secured by the Constitution and laws of the Nations' would be severely imperiled." *Wilson*, 535 F.3d at 268 (quoting *Wilson v. Garcia*, 471 U.S. 261, 271-72 (1985)). To avoid thwarting the statute's important purpose, the Fourth Circuit carved out an exception to the *Heck* rule, which requires prior favorable termination of the underlying criminal proceeding, in cases in which "a habeas ineligible former prisoner [is] seeking redress for denial of his most precious right — freedom." *Id.*; *see also Spencer*, 523 U.S. at 19-20 (Souter, J., concurring) (*Heck* should not apply at all where the plaintiff has no procedural vehicle to invalidate his earlier conviction); *id.* at 21 (Ginsburg, J., concurring) (same); *id.* at 25 n.8 (Stevens, J., dissenting) (same); *Campbell v. Beckley Police Dep't*, 390 F. App'x 246, 248 (4th Cir. 2010) (per curiam) (applying *Wilson v. Johnson* and reversing grant of summary judgment in favor of defendants where habeas-ineligible plaintiff sought damages for past confinement based on an alleged illegal 2 ½ year enhancement to his sentence).

4

A subsequent panel of this Court held, in an unpublished opinion, that a former prisoner who files a § 1983 claim must demonstrate "that habeas relief was unavailable during [his confinement], practically or otherwise." *Bishop v. Cnty. of Macon*, 484 F. App'x 753, 755 (4th Cir. 2012) (per curiam). This rule is not binding precedent, but even if it were, Mr. Griffin's circumstances meet this standard. Prior to the 2011 discovery of the BPD records proving that exculpatory evidence had been suppressed at his original trial, Mr. Griffin sought habeas relief but was denied (and the denial was affirmed on appeal to this Court).[2] After the discovery of the new evidence, Mr. Griffin pursued the available state remedies and obtained his release from incarceration. He then remained "in custody" on probation for only seven more months after resolving his post-conviction proceedings in state court. (*See* Probation/Supervision Order (May 23, 2012), *reprinted in* Addendum, *infra* at 5-8.) The court terminated his three-year probation early. (*See* Docket, *excerpt reprinted in* Addendum, *infra* at 10.) Like the plaintiff in *Wilson*, who was habeas-eligible for only four months, Mr. Griffin would have been, as a practical matter, unable to obtain habeas relief during this

---

[2] It does not matter that the exculpatory information was "available" (which we do not concede) under the Maryland Public Information Act. It was the officers' and the prosecution's affirmative duty to *disclose* the information. The burden never rested on Mr. Griffin to uncover the material through a public records request. Indeed, Appellees' failures to disclose should estop them from even making this argument.

short window of time.[3]  Appellees' citations to cases in which former prisoners "had ample opportunity to challenge or invalidate the criminal judgment . . . and failed to do so" thus fail to persuade.  (Appellee Br. 22-23.)

Appellees next assert that *Wilson* is inapplicable because *state* mechanisms to collaterally attack his conviction remain open to Mr. Griffin.  (Appellee Br. 27-28.)  The point is inapposite.  *Wilson* holds that a habeas ineligible former prisoner "should [not] be left without access to a *federal* court."  *Wilson*, 535 F.3d at 268.  That is this case: a federal § 1983 claim is Mr. Griffin's only remaining option to vindicate the violation of his constitutional rights.  (*See* Appellee Br. 23-25.)

Even if *Wilson* somehow mandated that Mr. Griffin must show it is impossible as a matter of law for him to satisfy *Heck*, he meets that standard.  Appellees falsely represent that Mr. Griffin could file a petition for actual innocence or for a writ of *coram nobis*.  But neither of these Sisyphean remedies is required at this time or presently available to Mr. Griffin.  First, Mr. Griffin already filed a petition for actual innocence on February 6, 2012, just four days

---

[3] Appellees claim that this point is abandoned because Mr. Griffin was under an obligation to clarify their false representation of fact to the district court in their reply brief.  But Mr. Griffin was not under obligation to move for leave to file a sur-reply or to move for reconsideration of the district court's order rather than file this appeal.  Because the custody issue was only one of three rationales supporting the district court's decision, correcting the Appellees' error at that point likely would have been futile.  The early termination of Mr. Griffin's probation remains a fact of which this Court may take judicial notice.  *See, e.g.*, *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

after he filed his final motion to reopen post-conviction proceedings. (Petitioner's Writ of Actual Innocence (filed Feb. 6, 2012), *excerpt reprinted in* Addendum, *infra* at 1-4.) Both the petition and the motion were based on the newly-discovered BPD records. (*Id.* at 3.) Both petitions informed Judge Rasin's determination that the constitutional violations that occurred warranted a new trial. Judge Rasin was prepared to vacate Mr. Griffin's conviction and order the new trial when the state and Mr. Griffin reached a consent agreement to modify his sentence, reducing it from life to time served.[4] Accordingly, Mr. Griffin cannot bring another petition for a writ of actual innocence on the same grounds already presented to (although not fully and finally litigated before) the Circuit Court for Baltimore City. Second, Mr. Griffin is unlikely to prevail on a petition for a writ of *coram nobis*. He was not eligible to petition for that writ until his probation terminated in December 2012. To obtain the writ, a petitioner must show that he is subject to "serious collateral consequences" due to the existence of his criminal judgment. *See*

---

[4] Appellees claim that permitting Mr. Griffin's suit to proceed "would confer on him the benefit of his bargain with the State while shielding him from its consequences." (Appellee Br. 26.) But Mr. Griffin never pled guilty and never waived or released his civil rights claims against the Appellees. He merely accepted a reduction in his sentence to achieve what he had fought for for thirty years — his freedom from incarceration. (*See* Order (June 5, 2012), *reprinted in* Addendum, *infra* at 9.) In exchange, the State received a benefit as well: it avoided having to muster its resources to retry Mr. Griffin. *Cf. Owens*, 767 F.3d at 387 (plaintiff continued to languish in prison for sixteen months following grant of new trial, until state finally determined to *nolle prosequi* his charges).

*Moguel v. State*, 184 Md. App. 465, 472, 966 A.2d 963, 967 (Ct. Spec. App. 2009).

While the Maryland Court of Appeals has expanded the traditional scope of the

writ to include errors of law as well as errors of fact, *Skok v. State*, 361 Md. 52,

760 A.2d 647 (2000), no Maryland court has held that "serious collateral

consequences" include that a preexisting conviction serves as a bar to a federal

civil suit for money damages.[5]  Even if Mr. Griffin succeeded in convincing the

court that the bar to his § 1983 suit is a sufficiently serious collateral consequence,

Appellees may yet attempt to block his petition for the writ by, for example,

asserting the affirmative defense of laches.  Finally, contrary to Appellees'

suggestion, Mr. Griffin is not eligible to apply for an executive pardon, *see* Md.

Parole Comm'n, *Pardon Guidelines* 3 (requiring ten-year waiting period after

release from probation to seek pardon), *available at* http://www.dpscs.state.md.us/

publicservs/pdfs/pardon_guidelines.pdf (last accessed Jan. 20, 2015), or an

expungement, *see* Md. Code Ann., Crim. Proc. § 10-105.[6]  As Appellees'

arguments make clear, Mr. Griffin's only recourse is to pursue his § 1983 claims in

---

[5] Ordinarily, "serious collateral consequences" are found only where the former prisoner faces deportation or may be subject to enhanced penalties in a subsequent criminal proceeding.  *See Holmes v. State*, 401 Md. 429, 452-53, 932 A.2d 698, 712 (2007).

[6] And even if Mr. Griffin were eligible for an expungement, to obtain one within three years of his release he would have to execute a general waiver and release of all claims arising out of his conviction — which he cannot do.

federal court, and the order of the district court dismissing the case should be reversed.

**B.    Mr. Griffin achieved a favorable termination of his life sentence through post-conviction proceedings sufficient to overcome *Heck*.**

In the alternative, even if the Court finds that *Heck* does apply (although it does not), the Court should nonetheless reverse the district court because of the unique circumstances of Mr. Griffin's case.

Although by its terms *Heck* requires "a § 1983 plaintiff [to] prove that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 486-87, in the unique circumstances of this case, Mr. Griffin can be said to have achieved a sufficient favorable termination of the underlying criminal proceeding.[7]  As the complaint alleges, on the strength of his post-conviction motions and petition for a writ of actual innocence, Judge Rasin was prepared to order Mr. Griffin a new trial.  Just before the court would have entered the order, Mr. Griffin finally won his freedom when the state agreed to a consent order reducing his sentence from life to time served.  The combination of these

---

[7] Mr. Griffin has never abandoned his § 1983 claim for malicious prosecution.  It is the core allegation of the complaint.  And it was not substantively attacked by Appellees below.  Rather, the motion to dismiss was on Rule 12(b)(6) grounds concerning the application of the *Heck* bar.

events had the effect of terminating the proceedings in his favor in a manner such that they could not be revived, which is all that the analogous common law tort required to remove the bar to suit. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 390 (4th Cir. 2014); *see also id.* at 391 (observing that malicious prosecution torts and *Brady*-like claims both require favorable termination). As such, to the extent *Heck* could be said to have barred Mr. Griffin's claims, its bar was lifted on either May 23, 2012 (the date of the consent order) or December 19, 2012 (the date the court terminated Mr. Griffin's probation). Accordingly, Mr. Griffin's case should be permitted to proceed.[8]

### C.    Appellees' arguments as to collateral estoppel lack merit.

In a § 1983 case, this Court looks to state law to determine whether the state would give the underlying criminal judgment preclusive effect. *Lee v. Winston*, 717 F.2d 888, 893-94 (4th Cir. 1983) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980), and *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, 481 (1982)), *aff'd*,

---

[8] Moreover, between the filing of the opening and response briefs in this appeal, this Court held in *Owens* that a *Brady*-type § 1983 claim, which is analogous to the common-law malicious prosecution tort, accrues for limitations purposes when the plaintiff achieves a favorable termination of the underlying criminal proceeding. *Owens*, 767 F.3d at 392. Mr. Griffin brought this suit on November 13, 2013, well within Maryland's three-year limitations period when calculated from either of the possible favorable termination dates above. By failing to raise the point in their brief on appeal, Appellees now concede that *Owens* forecloses their limitations argument. Thus the order of the district court cannot be affirmed on this alternative ground, because Mr. Griffin's suit is timely.

470 U.S. 753 (1985); *cf.* 28 U.S.C. § 1738 (full faith and credit for state court judgments).  Under Maryland law, the doctrine of collateral estoppel only applies when, *inter alia*, the party against whom the doctrine is asserted had a *fair* opportunity to be heard on the issue in the prior adjudication.  *See, e.g.*, *Burruss v. Bd. of Cnty. Comm'rs*, 427 Md. 231, 249-50, 46 A.3d 1182, 1193 (2012).

Appellees seek to collaterally estop Mr. Griffin from challenging the constitutionality of their conduct during the original trial.  (Appellee Br. at 30-32.)  But it is patent that Mr. Griffin is not collaterally estopped under Maryland law from pursuing his § 1983 claims.  As the outcome of his last motion for post-conviction relief and petition for writ of actual innocence indicate, Mr. Griffin did not have a *fair* opportunity to be heard on the issue of his actual innocence at his original trial.  It was *unknown* to the defense at the time of trial that the Detectives had suppressed the results of the photo arrays, the contradictory witness statements, and the evidence incriminating others besides Mr. Griffin.  For the same reasons, and contrary to Appellees' assertion, this Court is *not* required to give the original state proceedings full faith and credit because the Appellees' conduct denied Mr. Griffin due process in those proceedings — as Judge Rasin recognized in preparing to order a new trial.  *See Lee*, 717 F.2d at 895 & n.7.

II.     **The Detectives are not entitled to qualified immunity because the constitutional right at issue was clearly established in 1981-82 and their violation of that right is the cause of Mr. Griffin's injury.**

As stated in Mr. Griffin's opening brief, to overcome the qualified immunity defense, he must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[9] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (U.S. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Saucier v. Katz*, 533 U.S. 194 (2001) (establishing two-part test). These elements may be analyzed in any sequence. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This discussion presents the elements in reverse order in light of this Court's recent opinion in *Owens*, 767 F.3d at 398-401.

A.     **Appellees fail to overcome the unbroken line of precedent from *Barbee*, traced in *Owens*, that shows the duty of police to disclose material exculpatory evidence to the prosecution was clearly established in 1981-82.**

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor may not suppress material exculpatory evidence during a criminal trial. In the seminal case of *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842 (4th Cir.

---

[9] Appellees' emphasis on whether an officer knows he may be liable to a § 1983 plaintiff for damages is misplaced. (Appellee Br. 33-34.) *Reichle v. Howards*, 132 S. Ct. 2088 (U.S. 2012), did not remove the focus of the inquiry from the officer's *conduct* to his knowledge of his liability for damages. *See id.* at 2094; *see also Owens*, 767 F.3d at 400 (citing *Harlow*, 457 U.S. at 819, and *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

1964), this Court extended *Brady* by holding that the police likewise may not

suppress material exculpatory evidence. The Fourth Circuit stated:

> Failure of the police to reveal such material evidence in their
> possession is equally harmful to a defendant whether the information
> is purposely, or negligently, withheld. And it makes no difference if
> the withholding is by officials other than the prosecutor. The police
> are also part of the prosecution, and the taint on the trial is no less if
> they, rather than the State's Attorney, were guilty of the
> nondisclosure. If the police allow the State's Attorney to produce
> evidence pointing to guilt without informing him of other evidence in
> their possession which contradicts this inference, state officers are
> practicing deception not only on the State's Attorney but on the court
> and the defendant. . . .

> The duty to disclose is that of the state, which ordinarily acts through
> the prosecuting attorney; but if he too is the victim of police
> suppression of the material information, the state's failure is not on
> that account excused. We cannot condone the attempt to connect the
> defendant with the crime by questionable inferences which might be
> refuted by undisclosed and unproduced documents then in the hands
> of the police. To borrow a phrase from Chief Judge Biggs, this
> procedure passes "beyond the line of tolerable imperfection and falls
> into the field of fundamental unfairness."

*Barbee*, 331 F.2d at 846 (quoting *Curran v. Delaware*, 259 F.2d 707, 713 (3d Cir.

1958)).

Tracing the line of precedent from *Brady*, to *Barbee*, to *United States v.*

*Sutton*, 542 F.2d 1239 (4th Cir. 1976) and *Boone v. Paderick*, 541 F.2d 447 (4th

Cir. 1976), and finally to *Goodwin v. Metts*, 885 F.2d 157, 163-64 (4th Cir. 1989),

*overruled in part by Albright v. Oliver*, 510 U.S. 266 (1994), this Circuit recently

concluded, in *Owens*, that "[its] precedent unmistakably provides that, by 1988, a

police officer violates clearly established constitutional law when he suppresses material exculpatory evidence in bad faith." *Owens*, 767 F.3d at 401. Based on these precedents, the Court found that it was clearly established *by at least 1983* that a police officer in this Circuit violates a criminal defendant's constitutional rights by failing to disclose exculpatory evidence to the prosecution. *Id.* at 398-401. The question for the Court in Mr. Griffin's case is whether the same right was clearly established in 1981-82. The answer to that question is yes — for at least two reasons.

First, given the dates of the foregoing decisions, if the right was clearly established *by at least 1983*, and there were no intervening decisions between *Sutton* and *Boone*, on the one hand, and *Goodwin*, on the other, then it stands to reason that the right was clearly established in 1981-82. *See Jean v. Collins* ("*Jean I*"), 155 F.3d 701, 716 (4th Cir. 1998) (Ervin, J., dissenting) (pointing out the lack of decisions contravening *Barbee* between 1982 and 1983, and stating that "[a]t least since *Barbee* in 1964, a reasonable police officer in North Carolina would have known that a criminal defendant has a clearly established right to have officers deliver material, exculpatory evidence to prosecutors"), *cert. granted*,

14

*judgment vacated*, 526 U.S. 1142 (1999); *see also Jean v. Collins* ("*Jean II*"), 221

F.3d 656, 664-66 (4th Cir. 2000) (Murnaghan, J., dissenting).[10]

Second, when evaluating whether a constitutional right is clearly established,

this Court looks to not only its own decisions and those of the Supreme Court, but

also those of the highest state court in the jurisdiction in which the case arose.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).  The Maryland

Court of Appeals has followed the rule of *Barbee* — that the police are a part of

the prosecution, and the requirement to disclose material exculpatory evidence

applies to them as well as the prosecution — *since 1965.  See State v. Giles*, 239

Md. 458, 470, 212 A.2d 101, 108 (1965), *rev'd on other grounds*, 386 U.S. 66

(1967).  The rule of *Barbee* remains settled law in Maryland.  *E.g.*, *Williams v.

State*, 364 Md. 160, 177, 771 A.2d 1082, 1092 (2001) (quoting *Barbee*, 331 F.2d at

846); *see also Robinson v. State*, 354 Md. 287, 299, 730 A.2d 181, 187 (1999).

Thus, a reasonable police officer in Maryland in 1981-82 would have known that a

criminal defendant such as Mr. Griffin enjoyed the clearly established right to have

the officer disclose material, exculpatory evidence to the prosecution.  Appellees'

---

[10] Whether or not the judges of the Fourth Circuit "fervently disagreed" in 1998
and 2000 "about the existence, contours and scope of an officer's duty," *see*
*Owens*, 767 F.3d at 410 (Traxler, C.J., dissenting) (citing *Jean I* and *II*), does not
establish the nonexistence of that duty in 1981-82 based on *Barbee*, *Sutton*, *Boone*,
and *Goodwin*, *see Owens*, 767 F.3d at 400-01 (majority op.).

position to the contrary cannot withstand analysis under *Owens* and the foregoing precedents.

**B.    Mr. Griffin's decision to consent to a modification of his life sentence to time served is not the supervening legal or proximate cause of his wrongful imprisonment.**

Appellees belatedly present a new argument: that Mr. Griffin suffered no constitutional injury due to *their* conduct. (Appellee Br. 35-38.) Specifically, they assert that it was Mr. Griffin's decision in 2012 to consent to reduce his sentence from life to time served, rather than the Detectives' withholding of material exculpatory evidence in 1981-82, that caused Mr. Griffin to suffer wrongful incarceration for thirty years. At the threshold, however, this argument is waived because Appellees failed to raise it below. *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006) ("In the absence of exceptional circumstances, . . . nonjurisdictional arguments not made to the district court are waived on appeal.") (citation and footnote omitted).

Even if the Court is inclined to consider for the first time on appeal the argument that Mr. Griffin's decision is the supervening legal or proximate cause of his wrongful imprisonment and relieves Appellees of all responsibility for their conduct, that argument is unpersuasive. It relies on a decision of the First Circuit (which falls on the other side of the circuit split following *Spencer*) that has never been followed by any court in the Fourth Circuit. *See Olsen v. Correiro*, 189 F.3d

16

52 (1st Cir. 1999). In *Olsen*, the plaintiff was convicted in state court of first degree murder and sentenced to life without parole. His conviction was overturned and a new trial was ordered five years later based on police misconduct — the withholding of an audiotaped interview of the state's key witness. Prior to the second trial, however, Olsen pled *nolo contendere* to the lesser included charge of manslaughter, and was sentenced to time served on the original conviction. The balance of a ten- to fifteen-year manslaughter sentence was suspended. *See Olsen*, 189 F.3d at 55. In his subsequent § 1983 suit, Olsen initially was successful; but on appeal, the municipal defendant argued that Olsen's manslaughter plea and sentence barred incarceration-based damages. The First Circuit agreed, reasoning that both the limits of § 1983 (namely, the *Heck* favorable termination requirement and Justice Scalia's concurrence in *Spencer*) and the law of proximate cause (as affected by the *nolo contendere* plea) barred Olsen's damages claim. *See Olsen*, 189 F.3d at 66-70 (declining to decide between the rationales).

The *Olsen* case is distinguishable. First, the five years Olsen served on the first-degree murder conviction were specifically attributed, after his plea, to the sentence for the manslaughter offense, while the balance of the incarceration for the latter offense was suspended. In contrast, Mr. Griffin did not change his plea to his original convictions, but merely bargained with the state to reduce his life sentence to time served (without any suspended time) in exchange for concluding

17

his post-conviction proceedings without requiring the state to prepare for a new trial. Second, the police misconduct in *Olsen* was discovered far sooner than the police misconduct in this case, and Olsen served only one-sixth (less than 20%) of the time Mr. Griffin was incarcerated before he finally was able to achieve his release. *See Limone v. United States*, 497 F. Supp. 2d 143, 244-45 (D. Mass. 2007) (distinguishing *Olsen* for similar reasons where plaintiffs languished under lengthy prison terms after being framed for murder in the late 1960s), *aff'd on other grounds*, 579 F.3d 79 (1st Cir. 2009).

In other respects, Appellees' new argument merely reframes the *Heck-Spencer-Wilson* favorable termination issue in terms of proximate cause. (Appellee Br. 37-38.) For the reasons stated in Mr. Griffin's opening brief and this reply, however, the favorable termination rule does not apply in this case, and even if it did, on the facts in Mr. Griffin's particular case, the rule was satisfied. Accordingly, the Appellees should not prevail on this ground.

### C.   BPD may be held liable for the Detectives' conduct even if the Detectives ultimately succeed on their qualified immunity defense.

BPD, which concedes that it is not entitled to qualified immunity, argues instead that if the Detectives have qualified immunity, it cannot be held liable for their conduct. (Appellee Br. 38 n.8.) But the Fourth Circuit has definitively held that officers cannot be granted qualified immunity where, as Mr. Griffin has alleged in this action, they withhold exculpatory or impeachment evidence in bad

18

faith. *See Owens*, 767 F.3d at 396-97 & n.6. The *Owens* Court did not reach the question of whether qualified immunity applies where the officers acted in good faith, but still withheld exculpatory evidence that resulted in a violation of the defendant's rights. The Supreme Court, however, has held that *Brady* is violated when police withhold relevant exculpatory or impeachment evidence, regardless of whether the prosecutors knew of the evidence, *see Kyles v. Whitley*, 514 U.S. 419, 438 (1995), and regardless of whether the police can argue they acted in good faith, *see Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006). Thus, the BPD's policies, practices, or customs of withholding evidence would create an independent constitutional violation for which BPD can be held liable even if the Detectives could potentially prevail on their qualified immunity defense.[11]

---

[11] Notably, other circuits have held that there are circumstances under which individual defendants could assert qualified immunity defenses that would not be available to the municipal entity. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 304–05 (7th Cir. 2010) ("a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict"); *Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants."); *Anderson v. Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) ("*Monell* . . . and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government."); *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 310 (10th Cir. 1985) ("*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable.").

III.   **Appellees concede that Mr. Griffin has stated a *Monell* claim against BPD.**

By failing to address in their response brief this alternative ground in support of their original motion to dismiss, Appellees concede that Mr. Griffin sufficiently pled in his Complaint (JA 25-27) that the BPD demonstrated a custom and pattern of withholding exculpatory and impeachment evidence in his and other cases during the time period and from the same jurisdiction. *Cf. Owens*, 767 F.3d at 402-04 (reversing grant of motion to dismiss similar municipal liability claim alleging that BPD had a persistent and widespread "custom, policy, or practice of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions" in the 1980s). Thus the order of the district court cannot be affirmed on this alternative ground.

## CONCLUSION

"The remedial scope of § 1983 is obviously much broader than is that of habeas corpus, being available to all citizens and other persons within the jurisdiction of the United States, whether 'in custody' or not, and affording to successful claimants the full panoply of traditional equitable and legal remedies to redress actual or potential deprivations of constitutional rights under color of state law." *Lee*, 717 F.2d at 892. Despite the grand purpose of § 1983 that this Court recognized in *Wilson v. Johnson*, and despite this Circuit's concern that in cases such as Mr. Griffin's, a § 1983 plaintiff who has timely stated a plausible claim for

relief may be left without a federal forum in which to vindicate that grand purpose,

Appellees continue to deny their role in and responsibility for Mr. Griffin's

wrongful incarceration for more than three decades.  But for the foregoing reasons,

Mr. Griffin's case is not procedurally barred, and he is entitled to proceed with his

suit.  Accordingly, the order of the district court dismissing the complaint should

be reversed and the case remanded for further proceedings.

Respectfully submitted,

Dated: January 20, 2015

/s/ Sarah F. Lacey
Charles N. Curlett, Jr.
Sarah F. Lacey
LEVIN & CURLETT LLC
201 N. Charles St., Suite 2000
Baltimore, Maryland 21201
Tel.: 410-685-4444
Fax: 410-685-2222
ccurlett@levincurlett.com
slacey@levincurlett.com

*Attorneys for Wendell Griffin*

## **ADDENDUM**

WENDELL GRIFFIN

VS.

STATE OF MARYLAND

IN THE CIRCUIT COURT

FOR BALTIMORE CITY

CASE NO. 18120316

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**TO THE HONORABLE HON. GALE E. RASIN:**

### PETITIONER'S WRIT OF ACTUAL INNOCENCE

Petitioner Wendell Griffin, through counsel, Stephen B. Mercer, Chief Attorney, Forensics Division, Maryland Office of the Public Defender, requests, pursuant to MD. CODE CRIM. PROC., § 8-301, that this Honorable Court grant a new trial in the above matter because newly discovered eyewitness evidence creates a substantial or significant possibility that the result of Mr. Griffin's trial may have been different, and due to the State's suppression of that evidence, it could not have been discovered in time to move for a new trial under MD. RULE 4-331, thus warranting the relief prayed for herein. In support of this petition, Mr. Griffin states:

## I.   STATEMENT OF INFORMATION REQUIRED BY MD. CODE CRIM. PROC., § 8-301.

On July 22, 1981, the State obtained an indictment charging Mr. Griffin with first-degree murder of Mr. Wise and carrying a deadly weapon openly with intent to injure. Mr. Griffin was tried over the course of three days before a jury, (Hon. David Ross, J., presiding) and convicted on both counts on March 8, 1982. On April 27, 1982, after Mr. Griffin's *pro se* motion for a new trial was denied, Judge Ross sentenced Mr. Griffin to life imprisonment for the first-degree murder conviction and a consecutive sentence of three years for the deadly weapon conviction. Mr. Griffin is presently in the custody of the Department of Corrections (DOC #162-232) at the Western Correctional Institute.

The Court of Special Appeals affirmed these convictions in an unreported *per curium* opinion issued on April 4, 1983, and the Court of Appeals denied Mr. Griffin's petition for a writ of *certiorari* on April 11, 1984. Mr. Griffin filed a *pro se* petition for

post conviction relief under MD. CODE ANN., ARTICLE 27, §§ 645A-645J (Uniform Post Conviction Procedure Act) (PCPA), that was withdrawn without prejudice on February 23, 1993. Thereafter, Mr. Griffin filed a petition for post conviction relief on April 19, 1995 and an amended petition on May 18, 1995. In his petition as amended, Mr. Griffin asserted that he was entitled to post conviction relief because his counsel, Rolf A. Quisgard, provided ineffective assistance of counsel. A hearing was held on December 4, 1996, before the Hon. Robert Hammerman, and on December 13, 1996, Mr. Griffin's first petition for post conviction relief was dismissed and all relief denied.[1] The grounds set forth in Mr. Griffin's instant memorandum for relief were not previously raised or litigated in any prior proceeding.

On June 10, 2010, Mr. Griffin filed a *pro se* petition, pursuant to MD. CODE CRIM. PROC., §§ 8-201, *et seq.*, for post conviction DNA testing of certain items of evidence. The Court appointed Mr. Griffin counsel, and permitted counsel an opportunity to obtain documents from the Baltimore City Police Department pursuant to the Maryland Public Information Act, MD. CODE ANN., STATE GOV'T, §§ 10-611, *et seq.* (2011). These documents demonstrate that the State suppressed exculpatory evidence at Mr. Griffin's original trial that was material to his guilt or punishment for the murder of Mr. Wise, in violation of *Brady v. Maryland,* 373 U.S. 83 (1963) (due process bars the State from withholding evidence that is favorable to the defense and material to the defendant's guilt or punishment); *see also Smith v. Cain,* 2012 LEXIS 576 (U.S., Jan. 10, 2012).

On August 4, 2011, the Court conducted an evidentiary hearing to determine whether the State had met its burden of demonstrating that it had conducted a reasonable

---

[1] At the time of Mr. Griffin's post conviction hearing, Mr. Quisgard was employed as an attorney in the Collateral Review Division of the Office of the Public Defender, and his supervisor represented Mr. Griffin without obtaining Mr. Griffin's informed consent or putting in place any safeguards to resolve the significant risk that the representation of Mr. Griffin would be materially limited by the relationship between the supervisor and Mr. Quisgard. *See* MARYLAND RULE OF PROFESSIONAL CONDUCT, 1.7 (Conflict of Interest, General Rule).

search for evidence secured in connection with this case.[2]  At the conclusion of the August 4, 2011, hearing, the Court indicated that the State had conducted a reasonable search for evidence secured in connection with this case and that the Court would address at the next hearing whether the State's failure to produce the evidence was the result of intentional and willful conduct.  Presently, the Court is holding Petitioner's request for a finding of "intentional and willful" conduct under MD. CODE CRIM. PROC., § 8-201(j)(3)(iii)(2) (Lexis 2011) pending the decision of the Court of Appeals in *Washington v. State*, No. 22 (Sept. Term 2011) (date of argument: Nov. 3, 2011).

On February 2, 2012, Petition filed a Motion for Leave to Reopen Post Conviction and for Post Conviction Relief, based on the newly discovered eyewitness evidence that had been suppressed by the State at Mr. Griffin's trial.  These same grounds also warrant relief under MD. CODE CRIM. PROC., § 8-301, for the reasons set forth below.  *See generally, Douglas v. State*, 423 Md. 156, 31 A.3d 250 (2011).

## II. MR. GRIFFIN IS ENTITLED TO A NEW TRIAL IN THE ABOVE MATTER BECAUSE NEWLY DISCOVERED EYEWITNESS EVIDENCE CREATES A SUBSTANTIAL OR SIGNIFICANT POSSIBILITY THAT THE RESULT OF MR. GRIFFIN'S TRIAL MAY HAVE BEEN DIFFERENT, AND DUE TO THE STATE'S SUPPRESSION OF THAT EVIDENCE, IT COULD NOT HAVE BEEN DISCOVERED IN TIME TO MOVE FOR A NEW TRIAL UNDER MD. RULE 4-331.

Mr. Griffin was convicted of first-degree murder and carrying a deadly weapon based on eyewitness testimony that was disputed at his trial in 1982.  During proceedings in 2011 on Mr. Griffin's *pro se* petition for post conviction DNA testing of certain items of evidence, counsel for Mr. Griffin obtained police files pursuant to the Maryland Public Information Act ("MPIA"), MD. CODE ANN., STATE GOV'T §§ 10-611, *et seq.* (Lexis 2011), that contained statements by two eyewitnesses who did not identify Mr. Griffin in three photo arrays conducted by police.  Also discovered were other witness statements that contradicted the eyewitness testimony introduced by the State at Mr. Griffin's trial.

---

[2]  Mr. Griffin's counsel obtained a transcript of the August 4, 2011, hearing and served a copy of it to the State on December 15, 2011.

3

## IV.   CONCLUSION

This Court should grant Mr. Griffin the relief of a new trial grant because newly discovered eyewitness evidence creates a substantial or significant possibility that the result of Mr. Griffin's trial may have been different, and due to the State's suppression of that evidence, it could not have been discovered in time to move for a new trial under MD. RULE 4-331.

WHEREFORE, Petitioner respectfully requests the Court to grant the relief requested herein, and such other and further relief as the Court may deem appropriate.

Respectfully Submitted,

Stephen B. Mercer
Chief, Forensics Division
Office of the Public Defender
6 St. Paul Street, Suite 1400
Baltimore, MD 21202
(410) 767-5541
smercer@opd.state.md.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this $\underline{6}$ day of $\underline{Feb}$ 2012, that a copy of the foregoing petition was hand delivered to Michael E. Leedy, Assistant State's Attorney for Baltimore City at 100 North Calvert Street, Baltimore, MD 21202.

Stephen B. Mercer

17

**MARYLAND JUDICIARY**

☑ CIRCUIT COURT ☐ DISTRICT COURT OF MARYLAND FOR _Balt. City_ City/County

Located at _1141. Calvert St._ Case No. _81K01..._
Court Address

STATE OF MARYLAND          VS. _[Defendant name]_
Defendant

SID No. _M4442_

(IF AVAILABLE, PLACE LABEL HERE          Tracking Number _____
OR AT TOP OF PAGE.)

Convicted Count(s): _Murder 1_

Sentence: _life plus 15_

Part of Sentence Executed: _____          Suspended: _all but 30 life susp_
☐ Balance of sentence suspended upon admission
to treatment pursuant to HG § 8-507

Credit for Time Served: _from 7-1-81_

## PROBATION/SUPERVISION ORDER

☐ Probation before Judgment (Criminal Procedure Article § 6-220)

IT IS ORDERED THAT the above named Defendant:

☑ Be Unsupervised

☐ Be Supervised by: ☐ Drinking Driving Monitor Program only ☐ Parole and Probation ☐ Sexual

Offender Management Team ☐ Alternative Community Service:_____

☐ Other: _____

Length of Probation: _5_ mo/yr(s) ☐ Lifetime Sexual Offender Supervision by Management Team

Probation begins ☑ on _upon release_
☐ upon admission to residential
substance abuse program.

Your first appointment with the Supervising Agency is _upon release_ and the place to report to is
_901 Guilford Ave_ Your failure to report could result in your arrest.

A. Standard Conditions: ☑ All Standard Conditions ☐ All Standard Conditions except Nos. _____

1. Report as directed and follow your supervising agent's lawful instructions.

2. Work and/or attend school regularly as directed and provide verification to your supervising agent.

3. Get permission from your supervising agent before: changing your home address, changing your job, and/or leaving the State of Maryland

4. Obey all laws.

5. Notify your supervising agent at once if charged with a criminal offense, including jailable traffic offenses.

6. Get permission from the court before owning, possessing, using, or having under your control any dangerous weapon or firearm of any description.

7. Permit your supervising agent to visit your home.

8. Do not illegally possess, use, or sell any narcotic drug, controlled substance, counterfeit substance, or related paraphernalia.

9. Appear in court when notified to do so.

CC-DC 26 (Rev. 10/2010)    PRINT DATE 03/2011    Page 1 of 4

Case No. 18/30516

10. Pay all fines, costs, restitution, and fees as ordered by the court or as directed by your supervising agent through a payment schedule.

☐ Fine(s) of $_____ paid through ☐ Parole and Probation ☐ Clerk's Office ☐ Sheriff's Office

☐ Court costs of $_____ paid through ☐ Parole and Probation ☐ Clerk's Office

☐ Supervision fee of $25/month paid through Parole and Probation ☐ Supervision fee waived

☐ Restitution of $_____ to _____
paid through ☐ Parole and Probation ☐ State's Attorney's Office by _____ (Date)

☐ Public Defender fees of $_____ to the Office of the Public Defender for counsel fees.

☐ Pay the following fees through Parole and Probation or _____
☐ Victims of Crime Fund $_____
☐ CICF costs        $_____
☐ Other costs (Specify)  $_____

☐ The Division of Parole and Probation is hereby granted the discretion to refer the collection of funds it is authorized to collect to the State's Central Collection Unit without the need of further court approval.

B. **Special Conditions:**

11. ☐ Provide DNA sample as required by law by _____ (Date)

12. ☐ Submit to and pay for random urinalysis as directed by Supervising Agent.

13. ☐ Submit to, successfully complete, and pay required costs for ☐ alcohol ☐ drug ☐ alcohol and drug ☐ evaluation ☐ testing ☐ treatment ☐ education, as directed by your supervising agent.

14. ☐ Attend _____ self-help group meetings per week for _____ weeks. ☐ Attendance may be modified by your supervising agent after _____ weeks.

15. ☐ Attend and successfully complete ☐ alcohol ☐ drug ☐ alcohol and drug ☐ treatment ☐ education program

16. ☐ Totally abstain from alcohol, illegal substances, and abusive use of any prescription drug.

17. ☐ Apply for alcohol restriction on driver's license within 10 days of trial date for _____ year(s)/month(s).

18. ☐ Refrain from driving and/or attempting to drive after consuming alcohol.

19. ☐ Attend Victim Impact Panel meetings when notified.

20. ☐ Attend and successfully complete MVA Driver Improvement Program.

21. ☐ Have Ignition Interlock installed for _____ months and pay costs. ☐ Employment vehicle exempted.

22. ☐ Submit to evaluation and attend and successfully complete mental health treatment as directed by your supervising agent.

23. ☐ Attend and successfully complete Special Health Education Program - Project SASOE

24. ☐ Attend and successfully complete parenting class.

Case No. 181 30316

25. ☐ Complete _____ hours of community service by _____ (Date), under the direction
of _____ and pay required fees.

26. ☐ Enroll in, pay any required costs for, and successfully complete treatment at _____

27. ☐ Attend and successfully complete domestic violence counseling at _____
_____ by _____ (Date) and pay required costs.

28. ☐ Have no contact with _____
_____

29. ☐ Do not enter or be found near _____
_____

30. ☐ Home confinement/detention to _____ for _____ months
   ☐ Special conditions (e.g. doctor's appointments, attending classes, etc.) _____
   _____
   _____

31. ☐ **Register as sexual offender** with the supervising authority under the provisions of Criminal Procedure
   Article, Title 11, Subtitle 7:
   ☐ (1) A Tier I Sex Offender;
   ☐ (2) A Tier II Sex Offender;
   ☐ (3) A Tier III Sex Offender;
   ☐ (4) A sexually violent predator;
   ☐ (5) A Tier I Sex Offender who, before moving into this State, was required to
       register in another State;
   ☐ (6) A Tier II Sex Offender, Tier III Sex Offender, or sexually violent predator who,
       before moving into this State, was required to register in another State;
   ☐ (7) A Tier I, Tier II, Tier III Sex Offender, or a Sex Offender who is required to register in another
       State, Jurisdiction, a federal, military, or tribal court, or a foreign government, who is not a
       resident of this State, and who enters this State:
       (i)   To reside or habitually live.
       (ii)  To carry on employment or vocation that is full-time or part-time for
             a period exceeding 14 days or for an aggregate period exceeding 30 days during a
             calendar year, whether financially compensated, volunteered, or for the purpose of
             government or educational benefit; or
       (iii) To attend a public or private educational institution, including a secondary school,
             trade or professional institution, or institution of higher education, as a full-time or
             part-time student.
       iv)   As a transient with the intent to be in the State for a period exceeding 14 days or an
             aggregate period exceeding 30 days during the calendar year.

32. ☐ Other _____
_____
_____

Case No. _____

C. 33. ☐ Comply with special conditions of lifetime supervision - see form #CC-DC/CR 136.

D. Recommendations to the Supervising Agency:

34. ☐ Transfer supervision to ☐ _____ County/City, State of Maryland

☐ _____ State under the Interstate Compact

35. ☐ Defendant shall keep appointment for HG § 8-505 evaluation and shall immediately enter the recommended program upon admission.

☐ Defendant shall enter treatment program immediately upon admission.

☐ Defendant shall successfully complete treatment program and comply with terms of aftercare plan.

36. ☑ Other _____

_____

Judge: _____ Date: 5-23-1?

## CONSENT

I have read, or have had read to me, the above conditions of probation. I understand these conditions and agree to follow them. I understand that if I do not follow these conditions, I could be returned to court charged with a violation of probation.

If I fail to abide by the above conditions, the court could enter judgment against me and proceed with disposition as if I had not been placed under probation. I have been notified and understand that by consenting to and receiving a stay of judgment under Criminal Procedure Article, § 6-220, I waive my right to appeal from a judgment of guilty by the court in this case.

I understand that my failure to comply with Condition 10 may result in my case being referred to the State's Central Collection Unit, resulting in an additional collection fee as permitted by law.

X _____ X _____ X _____
Defendant's Signature          Date of Birth                    Date

X _____
Defendant's Address

_____
Witness' Signature

WENDELL GRIFFIN

       Petitioner

v.

STATE OF MARYLAND

       Respondent

\*    IN THE

\*    CIRCUIT COURT

\*    FOR

\*    BALTIMORE CITY

\*    CASE NO.: 18120316

\*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## ORDER

Upon a hearing in open court on May 23, 2012, all parties having been heard, it is hereby **ORDERED**, this 5th day of June, 2012, that the Petition for Post Conviction DNA Testing in this above-captioned case is **DISMISSED WITH PREJUDICE** at the request of both parties.

GALE RASIN - PART 19
JUDGE
THE JUDGES SIGNATURE APPEARS
ON THE ORIGINAL DOCUMENT ONLY

TRUE COPY
TEST

FRANK M. CONAWAY, CLERK

| DATE | DOCKET ENTRIES | NO. |
|------|----------------|-----|
| 12-19-12 | Status conf. heard and the defendants probation is terminated satisfactorily. Case condensed until 1/16/13 @ 8:07 motion. Karen J. | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TRUE COPY TEST FRANK M. CONAWAY, CLERK 8-19-14 CIRCUIT COURT FOR BALTIMORE CITY 1851 | |
| | | |
| | | |
| | | |
| | | |
| | | |

CC-65 (3/02)

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*5,404*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2011*] in [*14pt Times New Roman*]; or

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

    /s/_____
    Sarah F. Lacey

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of January, 2015, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Daniel C. Beck
> Baltimore City Law Department
> 100 North Holiday Street, Suite 101
> Baltimore, Maryland 21202
> (410) 396-2496
>
> *Counsel for Appellees*

I further certify that on this 20th day of January, 2015, I caused the required copies of the Reply Brief of Appellant to be delivered via overnight courier to the Clerk of the Court.

/s/ _____
Sarah F. Lacey